[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Grimes,* Slip Opinion No. 2017-Ohio-2927.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-2927

THE STATE OF OHIO, APPELLANT, *v.* GRIMES, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Grimes,* Slip Opinion No. 2017-Ohio-2927.]

*Criminal law—Postrelease control—To validly impose postrelease control when court orally provides all required advisements at sentencing hearing, sentencing entry must contain the following information: (1) whether postrelease control is discretionary or mandatory, (2) duration of postrelease-control period, and (3) statement to effect that Adult Parole Authority will administer postrelease control pursuant to R.C. 2967.28 and that any violation by offender of conditions of postrelease control will subject offender to consequences set forth in that statute—Trial court's sentencing entry included all required information and therefore validly imposed postrelease control—Court of appeals' judgment reversed, trial court's judgment reinstated, and cause remanded.*

(No. 2016-0215—Submitted February 9, 2017—Decided May 24, 2017.)

APPEAL from the Court of Appeals for Muskingum County,

No. CT2015-0026, 2015-Ohio-3497.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we consider what information a trial court must include in a sentencing entry to validly impose a postrelease-control sanction on an offender when the court orally provides all the required advisements to the offender at the sentencing hearing. We hold that to validly impose postrelease control when the court orally provides all the required advisements at the sentencing hearing, the sentencing entry must contain the following information: (1) whether postrelease control is discretionary or mandatory, (2) the duration of the postrelease-control period, and (3) a statement to the effect that the Adult Parole Authority ("APA") will administer the postrelease control pursuant to R.C. 2967.28 and that any violation by the offender of the conditions of postrelease control will subject the offender to the consequences set forth in that statute. Because the sentencing entry in this case included all the required information, we reverse the judgment of the Fifth District Court of Appeals, reinstate the judgment of the Muskingum County Court of Common Pleas, and remand the cause to the trial court for further proceedings consistent with this opinion.

**RELEVANT BACKGROUND**

{¶ 2} The Muskingum County Court of Common Pleas first imposed postrelease control on appellee-defendant, Bradley E. Grimes, in August 2011 as part of his sentence for convictions for robbery and vandalism. It is undisputed that the trial court properly advised Grimes at the sentencing hearing of his postrelease-control obligations and the consequences of violating a condition of postrelease control. The sentencing entry included the following statement:

The Court further notified the Defendant that **'Post Release Control'** is **mandatory** in this case for *three (03) years* as well as the consequences for violating conditions of post release control

2

> imposed by Parole Board under Revised Code § 2967.28. The Defendant is ordered to serve as part of this sentence any term for violation of that post release control.

(Bold and underline sic.) Grimes served his prison term in that case, was released from prison on December 30, 2012, and began serving the three-year period of postrelease control under supervision of the APA.

{¶ 3} On September 4, 2013, while Grimes was still under postrelease control, the Muskingum County Grand Jury indicted him on two counts of unlawful sexual conduct with a minor, both fourth-degree felonies. Grimes pled guilty to the first count, and the state dismissed the second.

{¶ 4} On January 7, 2014, the trial court sentenced Grimes to a one-year prison term, classified him as a Tier II sex offender, and imposed a judicial-sanction sentence pursuant to R.C. 2929.141 in which the court converted the remainder of the postrelease-control term imposed for his 2011 convictions into prison time and ordered that sentence to be served consecutively to his one-year prison sentence for the 2013 unlawful-sexual-conduct conviction.

{¶ 5} On April 16, 2015, having completed his prison term for unlawful sexual conduct with a minor, Grimes moved the trial court to vacate his judicial-sanction sentence and order his immediate release from prison. He argued that the court did not validly impose postrelease control when it sentenced him for his 2011 convictions. The trial court denied Grimes's motion without opinion.

{¶ 6} Grimes appealed to the Fifth District Court of Appeals, which reversed the trial court's judgment. The Fifth District held that the trial court's August 2011 sentencing entry "is silent as to the consequences of violating post-release control" and that therefore, the court "failed to inform [Grimes] if he violated his supervision or a condition of post-release control, the parole board

could impose a maximum prison term of up to one-half of the prison term originally imposed." 2015-Ohio-3497, ¶ 12.

{¶ 7} We accepted the state's discretionary appeal to address the following proposition of law:

> To impose valid post release control, the language in the sentencing entry may incorporate the advisements given during the sentencing hearing by referencing the post release control sections of the Ohio Revised Code and do not need to repeat what was said during the sentencing hearing.

*See* 145 Ohio St.3d 1407, 2016-Ohio-899, 46 N.E.3d 702.

## ANALYSIS

{¶ 8} It is settled that "a trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing" and that "any sentence imposed without such notification is contrary to law." *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 23. Concomitantly, because a court is generally said to speak only through its journal, *id.* at ¶ 6, the trial court is "required to incorporate that notice into its journal entry imposing sentence," *id.* at ¶ 17. In this case, the state asks us to identify what information the sentencing entry must contain to validly impose postrelease control.

{¶ 9} We begin by reciting the statutory requirements for notice at the sentencing hearing. The court at a sentencing hearing must notify the offender that he or she "will" or "may" "be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for" a felony. R.C. 2929.19(B)(2)(c) and (d). The offender "will" be supervised if the offender has been convicted of a felony subject to mandatory postrelease control. R.C. 2929.19(B)(2)(c) and 2967.28(B). The offender "may" be supervised if the

offender has been convicted of a less serious felony for which the APA has discretion to impose postrelease control. R.C. 2929.19(B)(2)(d) and 2967.28(C). The postrelease-control law also designates the term of supervision for each degree of felony. R.C. 2967.28(B) and (C). Additionally, the court, at the sentencing hearing, must notify the offender that if he or she "violates that supervision * * *, the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed upon the offender." R.C. 2929.19(B)(2)(e).

{¶ 10} We have interpreted these statutory provisions on a number of occasions when examining claims that a trial court's imposition of postrelease control was invalid. In a long line of cases, including those summarized in *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, ¶ 12-20 (lead opinion), we explained in more detail how a trial court can fail to validly impose postrelease control.

{¶ 11} We held that a trial court imposing post-release control "is duty-bound to notify [the] offender at the sentencing hearing about postrelease control and to incorporate postrelease control into its sentencing entry." *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at ¶ 22. After *Singleton*, we made clear that "statutorily compliant notification" includes "notifying the defendant of the details of the postrelease control and the consequences of violating postrelease control," *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 18, including whether postrelease control is discretionary or mandatory, *Jordan* at ¶ 22-23, and the term of supervision, *State v. Billiter*, 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960, ¶ 12. Although we have held that in order to validly impose postrelease control the notice given at the sentencing hearing must be incorporated into the sentencing entry, *Jordan* at ¶ 17, we have not decided whether—and if so, how—notice of the consequences of violating a condition of postrelease control must also be incorporated into the sentencing entry.

**{¶ 12}** Grimes argues, and the court of appeals agreed, that the judicial-sanction portion of his 2014 sentence was void because the trial court had failed to validly impose postrelease control for his 2011 robbery and vandalism convictions. According to the appellate court, the 2011 sentencing entry did not properly incorporate the notification that violation of postrelease control may result in an APA-imposed prison term of up to one-half of the defendant's sentence. 2015-Ohio-3497 at ¶ 12. The state counters that the entry's reference to R.C. 2967.28 was sufficient to incorporate the advisements orally made to Grimes at the sentencing hearing and that duplicating or repeating those advisements in the entry was unnecessary.

**{¶ 13}** We agree with the state[1] that in order to validly impose postrelease control, the trial court must incorporate into its sentencing entry the notifications it provides to the offender relating to postrelease control at the sentencing hearing but that it need not repeat those notifications verbatim in the entry. We conclude that to validly impose postrelease control, a minimally compliant entry must provide the APA the information it needs to execute the postrelease-control portion of the sentence. This conclusion reconciles the statutory requirements for imposition of postrelease control with our analyses in our postrelease-control decisions preceding this one.

**{¶ 14}** We are guided by our decision in *Qualls*, in which we considered a sentencing entry that did not mention postrelease control even though the trial court properly notified the offender about postrelease control at the sentencing hearing. 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718. We recognized in that case

---

[1] We need not address the arguments raised solely by amici curiae, including the attorney general's invitation that we conclude that sentencing entries that improperly attempt to impose postrelease control are voidable, not void. *State ex rel. Toledo Blade Co. v. Henry Cty. Court of Common Pleas*, 125 Ohio St.3d 149, 2010-Ohio-1533, 926 N.E.2d 634, ¶ 19, citing *Wellington v. Mahoning Cty. Bd. of Elections*, 117 Ohio St.3d 143, 2008-Ohio-554, 882 N.E.2d 420, ¶ 53 (an argument not raised by the parties will not be considered).

that "our main focus in interpreting the sentencing statutes regarding postrelease control has always been on the notification itself and not on the sentencing entry." *Id.* at ¶ 19. Indeed, we have deemed the "preeminent purpose" of R.C. 2967.28 to be that "offenders subject to postrelease control know *at sentencing* that their liberty could continue to be restrained after serving their initial sentences." (Emphasis added.) *Watkins v. Collins*, 111 Ohio St.3d 425, 2006-Ohio-5082, 857 N.E.2d 78, ¶ 52. In this case, as in *Qualls*, Grimes does not dispute that he was notified at the sentencing hearing that he would be subject to postrelease control, *see Qualls* at ¶ 6-7, so we conclude that the court accomplished the primary purpose of notice.

**{¶ 15}** A sentencing entry's silence on postrelease control, however, is impermissible because it is the sentencing entry that "empowers the executive branch of government to exercise its discretion," *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at ¶ 22, citing *Woods v. Telb*, 890 Ohio St.3d 504, 512-513, 733 N.E.2d 1103 (2000) (plurality opinion). In *Qualls*, we held that the trial court could correct the deficient entry by issuing a nunc pro tunc entry and that the offender was not entitled to a new sentencing hearing. *Qualls* at ¶ 30. We observed that correction through issuance of a nunc pro tunc entry is appropriate "as long as the correction is accomplished prior to the defendant's completion of his prison term." *Id.* at ¶ 24.

**{¶ 16}** This case is different from *Qualls* because the sentencing entry here provided adequate notice as to postrelease control. Contrary to Grimes's representation of the sentencing entry as making "a passing reference to postrelease control," it clearly states that Grimes was subject to mandatory postrelease control for three years, informs the APA that the trial court notified Grimes that he would be subject to "the consequences for violating conditions of post release control imposed by Parole Board under Revised Code § 2967.28," and ordered him to "serve as part of this sentence any term for violation of that post release control."

Among numerous other instructions and consequences, R.C. 2967.28 states that "the maximum cumulative prison term for all violations under [the postrelease control] division shall not exceed one-half of the stated prison term originally imposed upon the offender as part of this sentence." R.C. 2967.28(F)(3).

{¶ 17} Grimes argues that a judgment entry must " ' "so dispose of the matters at issue between the parties that they and such other persons as may be affected, will be able to determine with reasonable certainty the extent to which their rights and obligations have been determined." ' " Grimes's brief at 19, quoting *Licht v. Woertz*, 32 Ohio App. 111, 115, 167 N.E. 615 (8th Dist.1929), quoting 1 Freeman, *A Treatise of the Law of Judgments* 126 (5th Ed.1925). But the trial court's sentencing entry in this case did that and incorporated all the notifications necessary for the APA to perform its job. By specifying that Grimes was subject to mandatory supervision for three years, the entry informed the APA that it lacked discretion as to whether to impose postrelease control or for how long.

{¶ 18} The entry also informed the APA that Grimes had been advised that if he violated any of the conditions of postrelease control there would be consequences, up to and including prison time, as described in R.C. 2967.28(D)(1). And the APA could review R.C. 2967.28 for necessary information about its authority to impose postrelease control and to punish Grimes for any violations.

{¶ 19} We agree that articulating in the sentencing entry the specific information set forth in R.C. 2929.19—including that "the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed upon the offender," R.C. 2929.19(B)(2)(e)—would be more thorough. Although the trial court in this case could have been more comprehensive in its sentencing entry, the entry nevertheless satisfies the requirement that the trial court incorporate the advisements it provided at the sentencing hearing. By referring to R.C. 2967.28, the trial court's entry empowered Grimes and other readers to consult the statute and determine what consequences

the APA could impose for any violation of the conditions of postrelease control. The entry thus met the statutory threshold for imposing a valid postrelease-control sentence.

{¶ 20} Notably, we caution that this appeal presents a case in which it is undisputed that the trial court provided all the required advisements regarding postrelease control to Grimes at the sentencing hearing. Grimes did not introduce a transcript of the hearing into the record, so we must assume the regularity of the sentencing hearing. *Natl. City Bank v. Beyer*, 89 Ohio St.3d 152, 160, 729 N.E.2d 711 (2000). Our holding is limited to those cases in which the trial court makes the proper advisements to the offender at the sentencing hearing. We reach no conclusion as to the requirements for sentencing entries in cases in which notice at the sentencing hearing was deficient.

{¶ 21} Regardless of the facts of a given case, the bench and bar must understand and be guided by the separate but related responsibilities of the trial courts and the APA with respect to postrelease control. It is the trial judge's responsibility to impose postrelease control, including the responsibility to interpret the law to determine in each case whether postrelease control is mandatory or discretionary and to determine the term of supervision as well as to advise the offender of those determinations and the consequences that the APA may impose for any postrelease-control violations. It is the responsibility of the APA to carry out the sentence after the court imposes it, not to interpret the law and facts and impose its own sentence based on information in the sentencing entry.

{¶ 22} Grimes's argument that *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, controls this case is unpersuasive. *Ketterer* involved an offender facing the death penalty in a case with numerous procedural errors that necessitated both resentencing on his noncapital offenses and a nunc pro tunc entry to correct the resentencing entry. Ketterer challenged the nunc pro tunc entry on appeal to this court from his resentencing. We determined that the resentencing

hearing and the nunc pro tunc entry were both defective. At the sentencing hearing, the court informed Ketterer that he was subject to postrelease control on counts two and five when he was actually subject to postrelease control on counts two and three. *Id.* at ¶ 78. In addition, the nunc pro tunc entry incorrectly stated that Ketterer was advised at the resentencing hearing that he was subject to postrelease control as to four counts, and the trial court never held the hearing required before a nunc pro tunc entry is journalized. *Id.*, citing R.C. 2929.191.

{¶ 23} Grimes relies on our determination that the trial court erred by failing to include in the nunc pro tunc entry the maximum term that the APA could impose if Ketterer violated a condition of his postrelease control, *see id.* at ¶ 77. While we did determine that the nunc pro tunc entry should be amended to include this information, given the substantial deficiencies of the resentencing hearing and the nunc pro tunc entry—and our observation that "trial courts in capital cases must scrupulously comply with the applicable statutes and rules, even those involving postrelease control," *id.* at ¶ 78—we decline to extend this determination beyond the facts and circumstances of *Ketterer*.

{¶ 24} We also find little merit in Grimes's warning that a failure to affirm the Fifth District's judgment "would transfer the judiciary's authority to determine and impose criminal sentences to the executive branch." First, as already described, the trial court's sentencing entry did give proper notice as to postrelease control. Second, even if the entry had not explicitly referred to the APA's authority to impose a prison term for violations of postrelease control, there would be no breach of the separation of powers because the APA did not impose the prison term at issue in this case—the court did. For the same reason, Grimes would not have been prejudiced if the trial court had failed to advise him in its entry that the APA had authority to impose a prison term as a consequence of violating postrelease control.

**CONCLUSION**

**{¶ 25}** The trial court validly imposed postrelease control by advising Grimes at the sentencing hearing of the term of supervision, that it was mandatory, and that the APA would administer the postrelease control pursuant to R.C. 2967.28, including subjecting him to consequences up to and including prison time for violating postrelease control, and then incorporating those advisements into the sentencing entry. Accordingly, we reverse the judgment of the Fifth District Court of Appeals, reinstate the judgment of the Muskingum County Court of Common Pleas denying Grimes's motion to vacate his judicial-sanction sentence, and remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed,

trial court's judgment reinstated,

and cause remanded.

O'DONNELL, O'NEILL, and FISCHER, JJ., concur.

KENNEDY, J., concurs in judgment only, with an opinion

FRENCH, J., concurs in judgment only, with an opinion.

DEWINE, J., concurs in judgment only, with an opinion.

_____

**KENNEDY, J., concurring in judgment only.**

**{¶ 26}** I agree with the majority that the trial court validly imposed postrelease control in this case, but I do not concur in the majority's conclusion that R.C. 2929.19(B)(2) requires that the sentencing entry contain "the duration of the postrelease-control period." Majority opinion at ¶ 1. Instead, I agree with the portion of Justice DeWine's opinion concurring in judgment only that concludes that R.C. 2929.19(B)(2) requires only that the two specified notifications be provided "at the sentencing hearing."

_____

**FRENCH, J., concurring in judgment only.**

{¶ 27} I agree with Justice DeWine that our precedent on postrelease control is wrong, and we should revisit it. I have long supported Justice Lanzinger's approach to errors in imposing postrelease control: those errors render a sentence voidable on direct appeal—not void. *E.g.*, *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 38 (Lanzinger, J., dissenting). And because these issues can be raised on direct appeal, the failure to properly raise them at that time forecloses courts—including us—from later reviewing them. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. That is classic res judicata, which we should apply to bar Grimes's challenge. Because the majority concludes otherwise, I concur in the judgment only.

_____

**DEWINE, J., concurring in judgment only.**

{¶ 28} Today, the majority writes yet another installment in a seemingly endless serial on trial-court advisements about postrelease control. While the majority reaches the right result today, the path it takes there need not be so complicated. Ohio has a straightforward statutory scheme relating to postrelease-control notification. We ought to follow it. What's more, we should return to the traditional rule that any challenge to an improper postrelease-control advisement must be raised on direct appeal.

I.    A broader look at our postrelease-control jurisprudence is in order

{¶ 29} A stranger to our jurisprudence reviewing our criminal case law over the past decade undoubtedly would be surprised by the plethora of decisions concerning advisements about postrelease control. One might think that the most pressing issue confronting our criminal-justice system is the manner and terms by which trial courts tell defendants about supervision after they leave prison.

{¶ 30} Our work in this area has been neither clear nor consistent. The confusion comes from two lines of decisions. In the first, we have abandoned

12

traditional principles of res judicata for postrelease-control sentencing errors and have insisted on treating sentences involving such as errors as void, rather than merely voidable. In the second, we have ignored the plain language of the sentencing statute that was intended to govern trial-court advisements about postrelease control. *See* R.C. 2929.19.

**{¶ 31}** The majority takes the position that we need not reach the void-versus-voidable issue because it has not been raised by the parties. Majority opinion at fn.1. But I don't know how we can avoid the issue. The Fifth District Court of Appeals reversed the trial court on the basis that the postrelease-control portion of the sentence was void. In reversing the judgment of the court of appeals, the majority concludes that the sentence was not void, because the sentencing entry contained enough information. But to undertake such an analysis requires that we assume that an error in the sentencing entry *could* render the entry void. Because I assume no such thing, I believe that we must reach the void-versus-voidable issue.

**{¶ 32}** Similar logic applies to the statutory issue. The argument raised by appellee, Bradley E. Grimes, is that a sentencing entry cannot impose postrelease control unless it explains the consequences for a postrelease-control violation. As I explain below, I reject not only Grimes's argument that the sentencing entry must announce the consequences of a postrelease-control violation but also its underlying premise that—contrary to statute—a sentencing entry must include an advisement about postrelease control in order for the parole board to place an offender on postrelease control. There is no intellectually honest way for me to address Grimes's argument without also addressing its underlying premise.

**{¶ 33}** We have explained that

[w]hen an issue of law that was not argued below is implicit in another issue that was argued and is presented by an appeal, we may consider and resolve that implicit issue. To put it another way, if we

must resolve a legal issue that was not raised below in order to reach
a legal issue that was raised, we will do so.

*Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993). This is such a case. To fully resolve the issues that were raised, we need to reach both the void-versus-voidable issue and the statutory issue.

II. Grimes should not be allowed to collaterally attack his sentence

**{¶ 34}** That this case is before us at all is due to an anomaly in our jurisprudence. The purported error in his sentencing entry about which Grimes now complains is one that he could have raised in an appeal from his 2011 convictions and sentence. He did not do so. Under our traditional rules, Grimes's failure to raise the issue on direct appeal would—as a matter of res judicata—prevent him from raising it now. *See, e.g.*, *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967).

**{¶ 35}** In recent years, however, we have held that our normal rules do not apply to most sentencing errors related to postrelease control. Rather than sticking to the traditional view that such errors make a sentence "voidable," and thus subject to challenge only on direct appeal, we have concluded that these errors render the sentence void and subject to challenge at any time. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 8, citing *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 14. *Accord State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 16, *overruled in part on other grounds*, *Fischer* at ¶ 28.

**{¶ 36}** Historically, a void sentence was understood to be one imposed by a court that "lack[ed] subject-matter jurisdiction or the authority to act." *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 27. "A voidable sentence," on the other hand, "is one that a court ha[d] jurisdiction to impose, but

was imposed irregularly or erroneously." *Id.* Under the traditional view, a sentence that is not void, but merely voidable, may successfully be challenged only on direct appeal. *Id.* at ¶ 28. Generally, sentencing errors were considered nonjurisdictional and simply made the sentence voidable. *See, e.g.*, *Majoros v. Collins*, 64 Ohio St.3d 442, 443, 596 N.E.2d 1038 (1992).

{¶ 37} As pointed out by Justice Lanzinger in a series of thoughtful dissents, this court's extension of the void-sentence doctrine in the postrelease-control area—and its subsequent expansion of the doctrine to include other sentencing errors—is contrary to historical practice. *See, e.g.*, *Bezak* at ¶ 30-31 (Lanzinger, J., dissenting); *Fischer* at ¶ 41-57 (Lanzinger, J., dissenting); *State v. Billiter*, 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960, ¶ 15-26 (Lanzinger, J., concurring in part and dissenting in part); *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 35-68 (Lanzinger, J., dissenting). It is also contrary to the understanding of most other courts, including the United States Supreme Court. *See, e.g.*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (" 'A judgment is not void * * * simply because it is or may have been erroneous' "), quoting *Hoult v. Hoult*, 57 F.3d 1, 6 (1st Cir.1995). Furthermore, our jurisprudence in this area has been inconsistent and has sown confusion among the lower courts. *Williams* at ¶ 60-64 (Lanzinger, J., dissenting). And perhaps most troubling, it has undermined traditional principles of res judicata and the finality of judgments. *Id.* at ¶ 59; *Billiter* at ¶ 18 (Lanzinger, J., concurring in part and dissenting in part).

{¶ 38} We should return to our traditional view of void and voidable sentences. Doing so would restore our jurisprudence to case law dating back to the 19th century. *See, e.g.*, *Ex Parte Shaw*, 7 Ohio St. 81, 82 (1857). In addition, it would harmonize the treatment of postrelease-control sentences with the treatment of the rest of criminal sentences. *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, at ¶ 51 (Lanzinger, J., dissenting); *see also* R.C. 2953.08(A)(4) and

(B)(2) (granting the defendant and the state the right to appeal sentences when they are "contrary to law").

{¶ 39} Under the traditional view, the purported error now challenged by Grimes would make his sentence voidable, not void. Thus, it would not be subject to a collateral attack. Because Grimes failed to file a direct appeal, principles of res judicata prevent him from now attacking his sentence. I would reverse the judgment of the court of appeals on that basis.

III.    We should follow the sentencing statute

{¶ 40} This court's failure to follow traditional res judicata rules is not the only irregularity in our postrelease-control decisions. Just as strange is our failure to follow the sentencing statute. Indeed, our jurisprudence in this area is remarkably unconnected to what the legislature has ordained.

{¶ 41} The question the court confronts today is exactly what information a sentencing entry must contain concerning postrelease control—or, more precisely, what information has to be in the entry so as not to render a sentence void. One might think the natural starting place for such an inquiry would be the Ohio Revised Code. Not so. Here, we are dealing purely with judge-made law. Nothing in any statute requires that anything at all about postrelease control be stated in the sentencing entry.

{¶ 42} The only statutory sentencing requirements relating to postrelease control concern notifications to be provided "at the sentencing hearing." R.C. 2929.19(B)(2). A trial court that has imposed a prison term is to notify the offender that he "will" or "may" be subject to postrelease control under R.C. 2967.28 after he leaves prison. R.C. 2929.19(B)(2)(c) and (d). In addition, the trial court must "[n]otify" the offender that if he violates the terms of his postrelease control, the parole board may impose a prison term of up to one-half of the original prison sentence. R.C. 2929.19(B)(2)(e). That is it: these two notifications are all that the statute requires with respect to postrelease control.

16

{¶ 43} Further, the statutory scheme as written effectively renders harmless most trial-court mistakes relating to postrelease-control advisements. For those defendants subject to a mandatory term of postrelease control,

> the failure of a court to notify the offender * * * that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison or to include in the judgment of conviction entered on the journal a statement to that effect does not negate, limit, or otherwise affect the mandatory period of supervision that is required for the offender.

R.C. 2929.19(B)(2)(c). *See also* R.C. 2967.28(B) (failing to comply with R.C. 2929.19(B)(2)(c) does not negate or limit the mandatory period of postrelease control).

{¶ 44} Additionally, R.C. 2929.19(B)(2)(e) provides that the failure of the court to notify the offender that the parole board may impose a prison term for a violation of the terms of postrelease control or

> to include in the judgment of conviction entered on the journal a statement to that effect does not negate, limit, or otherwise affect the authority of the parole board to so impose a prison term for a violation of that nature if * * * the parole board notifies the offender prior to the offender's release of the board's authority to so impose a prison term.

{¶ 45} Thus, were we to apply the statute to Grimes, this would be an easy case. There is no statutory requirement that anything regarding postrelease control be stated in his sentencing entry. And even if there was such a requirement, any

defect in failing to advise him of the consequences of a violation could be corrected by the parole board prior to his release.

**{¶ 46}** Notwithstanding this statutory scheme, the majority opinion is predicated upon the assumption that postrelease control may be imposed only if it is provided for in the sentencing entry. The majority writes: "A sentencing entry's silence on postrelease control, however, is impermissible because it is the sentencing entry that 'empowers the executive branch of government to exercise its discretion.' " Majority opinion at ¶ 15, quoting *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 22, citing *Woods v. Telb*, 890 Ohio St.3d 504, 512-513, 733 N.E.2d 1103 (2000) (plurality opinion).

**{¶ 47}** The notion that despite the plain terms of the statutory scheme, a trial court must incorporate postrelease-control language into its journal entry is apparently premised on the doctrine of separation of powers. We first articulated this idea in *Jordan*, in which we wrote: "[B]ecause the separation-of-powers doctrine precludes the executive branch of government from impeding the judiciary's ability to impose a sentence, the problem of having the Adult Parole Authority impose postrelease control at its discretion is remedied by a trial court incorporating postrelease control into its original sentence." *Jordan* at ¶ 19, citing *Woods* at 512-513. We have continued to adhere to this requirement in subsequent cases. *See, e.g.*, *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 15; *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, ¶ 15 (lead opinion).

**{¶ 48}** What we have never done is explain in any cogent fashion why the separation-of-powers doctrine requires postrelease control to be judicially imposed. The separation-of-powers doctrine protects the ability of each branch of government to exercise its constitutional duties without interference from the other branches of government. *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-

Ohio-1825, 848 N.E.2d 472, ¶ 56; *State v. Hochhausler*, 76 Ohio St.3d 455, 463-464, 668 N.E.2d 457 (1996).

{¶ 49} Nothing in the doctrine requires that a postrelease-control notification be included in a sentencing entry. The sentencing-entry requirement does not protect the judiciary from "interference" by the other branches of government. Moreover, there is nothing in the provisions of R.C. 2929.19(B)(2)(c) and 2929.19(B)(2)(e)—the provisions that deem certain judicial postrelease-control omissions harmless—that "interferes" with the operation of the judicial branch.

{¶ 50} Indeed, postrelease control is an area that is almost completely devoid of judicial decision-making. The crime of which an offender has been convicted dictates whether postrelease control is mandatory or discretionary and for how long it will or may be imposed. Those convicted of felony sex offenses or first-degree felonies are supervised for a mandatory period of five years. R.C. 2967.28(B)(1). Those convicted of second-degree felonies (other than sex offenses) and third-degree offenses of violence[2] are supervised for a mandatory period of three years. R.C. 2967.28(B)(2) and (3). All other felony offenders are subject to up to three years of postrelease control at the discretion of the parole board. R.C. 2967.28(C).

{¶ 51} In this process, the judge serves only a ministerial role. The judge is to advise the offender about postrelease control but has no decision-making authority. R.C. 2929.19(B)(2). Once the offender is convicted, the judge has no say over who goes on postrelease control or for how long. R.C. 2967.28(B) and (C).

{¶ 52} In light of the purely ministerial function of the judge in terms of postrelease control, it seems absurd to say that the separation-of-powers doctrine is somehow violated by the imposition of postrelease control absent advisement in the

---

[2] The "offense[s] of violence" for which three years of postrelease control are mandatory are specifically enumerated in R.C. 2901.01(A)(9).

sentencing entry. Such a hypertechnical reading of the separation-of-powers doctrine does nothing to promote the independence of the judiciary; to the contrary, it treats judges as bureaucratic functionaries.

{¶ 53} The majority suggests that before the parole board may carry out its responsibilities, a judge must "interpret" the law to determine whether postrelease control is mandatory and to determine the term of supervision. Majority opinion at ¶ 21. But that is simply not the case. Here, for example, even without the postrelease-control advisement, it is clear from the sentencing entry that Grimes was convicted of a third-degree "offense of violence." *See* R.C. 2901.01(A)(9). Thus, a three-year term of postrelease control was mandatory. R.C. 2967.28(B)(3). No judicial "interpretation" was required. The parole board—we must presume— is perfectly capable of applying a simple and unambiguous statutory provision.

{¶ 54} Because I find nothing in the statutory scheme inconsistent with the separation-of-powers doctrine, I would apply the statute as written. Under a plain reading of the statute, postrelease-control notification was not required in Grimes's sentencing entry.

IV.     There are compelling reasons to revisit our prior decisions

{¶ 55} While we should not lightly overrule prior decisions of this court, we have recognized that it is appropriate to do so when " 'the necessity and propriety of doing so has been established.' " *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 44, quoting *Wampler v. Higgins*, 93 Ohio St.3d 111, 120, 752 N.E.2d 962 (2001). Such circumstances exist when "(1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it." *Id.* at ¶ 48. All three criteria are met here.

20

{¶ 56} As explained above, both lines of cases rest upon decisions that were decided contrary to our traditional principles. *See Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, at ¶ 16; *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at ¶ 19. And in subsequent decisions, we have only magnified our initial errors. Like the protagonist in the Springsteen song, we "took a wrong turn and [we] just kept going."

{¶ 57} There can be no doubt about the practical unworkability of these decisions. We have seen mass confusion among the lower courts about what is required in terms of postrelease control. Our void-sentence jurisprudence has disrupted settled principles of res judicata and upended the finality of judgments—sentences are now subject to attack years after the time for appeal has expired.

{¶ 58} Our failures in this area have caused a significant waste of resources that could be put to far better use in our criminal-justice system. The practical result of our jurisprudence is that prisoners are routinely shuttled from state prison back to trial courts for the simple formality of the trial judge intoning the "magic" postrelease-control language. It would be one thing if the law required such undertakings, but it doesn't.

{¶ 59} All of this has not gone unnoticed. Lower courts have found our jurisprudence to be "inconsisten[t]," *State v. Holcomb*, 184 Ohio App.3d 577, 2009-Ohio-3187, 921 N.E.2d 1077, ¶ 11 (9th Dist.), and "difficult-to-decipher," *State v. Clark*, 2d Dist. Clark No. 2012 CA 16, 2013-Ohio-299, ¶ 11. Its "practical implications" have been called "onerous" and "messy." *State v. Mitchell*, 187 Ohio App.3d 315, 2010-Ohio-1766, 931 N.E.2d 1157, ¶ 29 (6th Dist.). One court bemoaned the "perpetual complexity" in this area of the law and "the waste of judicial resources" entailed in following our shifting "directives." *State v. Pennington*, 4th Dist. Lawrence No. 15CA5, 2016-Ohio-2792, ¶ 24, 25.

{¶ 60} One judge summed it up nicely:

> This case highlights the practical drawbacks with the current legal framework surrounding the imposition of post-release control. * * * By the time this case is resolved, the amount of judicial and financial resources expended will be extraordinary. Moreover, it evidences that the goal of ensuring finality in sentencing is becoming increasingly more difficult to achieve.

*State v. Mundy*, 9th Dist. Medina No. 08CA0047-M, 2009-Ohio-6373, ¶ 9 (Carr, J., dissenting).

{¶ 61} Our decisions in the postrelease-control area were wrongly decided and have proven practically unworkable. As for the third criterion identified in *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 48, there are no reliance interests at stake that should prevent us from correcting our errors.

{¶ 62} We have muddled this area of the law for too long. It is time we return to traditional legal principles, follow the statute, and put to rest the confusion surrounding postrelease-control notification.

V. Conclusion

{¶ 63} I concur in this court's judgment reversing the judgment of the Fifth District. I agree that Grimes received adequate notification concerning his postrelease sanction. But I would go further than the majority and hold that Grimes's action is barred by res judicata because postrelease-control errors at sentencing do not render a sentence void. I would also follow the plain language of the statute and conclude that no advisement concerning postrelease control was required to be included in Grimes' sentencing entry.

_____

D. Michael Haddox, Muskingum County Prosecuting Attorney, and Gerald V. Anderson II, Assistant Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick and Andrew D. Hartman, Assistant Public Defenders, for appellee.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, and M. Ryan Harmanis, Deputy Solicitor, urging reversal for amicus curiae Ohio Attorney General.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney, urging reversal for amicus curiae Cuyahoga County Prosecutor's Office.

Ronald O'Brien, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, urging reversal for amicus curiae Franklin County Prosecuting Attorney.

_____