[Cite as *State v. Chears*, 2021-Ohio-260.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO.  5-20-24

    v.

OSCAR G.D. CHEARS,                        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2016 CR 00238

Judgment Affirmed

Date of Decision:  February 1, 2021

APPEARANCES:

    *Brian A. Smith* for Appellant

    *Phillip A. Riegle* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Oscar Chears ("Chears"), brings this appeal from the May 11, 2020 judgment of the Hancock County Common Pleas Court revoking his community control and sentencing him to an 18-month prison term after it was determined that Chears violated his community control by committing multiple felonies in Michigan. On appeal, Chears argues that his prison term was not supported by the record, that the trial court did not give him appropriate jail-time credit, and that he was not properly notified of post-release control.

*Background*

{¶2} On August 12, 2016, Chears stole over $1,000 in goods from Wal-Mart in Hancock County then drove away. After being informed of the incident, police officers located his vehicle and attempted to initiate a traffic stop. Chears did not comply with an officer's signal to stop and a chase ensued. Chears drove north for approximately 25 minutes, covering 37.5 miles, and reaching a top speed of 100 mph. He also drove over spike strips that had been deployed. Chears was eventually apprehended.

{¶3} On August 23, 2016, Chears was indicted for Failure to Comply with Order or Signal of Police Officer in violation of R.C. 2921.331(B), a felony of the third degree, and Theft in an amount exceeding $1,000 but less than $7,500 in

violation of R.C. 2913.02(A)(1), a felony of the fifth degree. Chears originally pled not guilty to the charges.

{¶4} On November 10, 2016, a change-of-plea hearing was held wherein Chears agreed to plead guilty to the charge of Failure to Comply with Order or Signal of Police Officer as indicted, and in exchange the State agreed to dismiss the Theft charge. The agreement was reduced to writing and it was signed by Chears, his defense counsel, the prosecutor, and the judge. The trial court conducted a Crim.R. 11 dialogue with Chears and determined that his plea was knowing, intelligent, and voluntary. Chears's plea was accepted, and he was found guilty of Failure to Comply with Order or Signal of Police Officer, a felony of the third degree.

{¶5} On December 22, 2016, Chears was sentenced to five years of community control and he was notified that if he was found in violation of his community control he would be subject to a prison term of 18 months. Due to the fact that Chears actually lived in Wayne County, Michigan, his supervision was transferred to Michigan pursuant to the interstate compact.

{¶6} The next event that occurred that is relevant to this appeal was on August 30, 2019, when Chears was convicted in Michigan of "Motor Vehicle Unlawful Driving Away," and "Police Officer—Assault/Resist," both felony offenses. He was sentenced to serve 305 days of incarceration and given two years

of probation. Because of the Michigan convictions, the State of Ohio filed a motion to revoke Chears' community control in the case *sub judice*.

**{¶7}** On May 11, 2020, a hearing was held on the allegations that Chears had violated his community control by committing the felony offenses in Michigan. Chears did not deny that he had committed the crimes, which were similar in nature to what had occurred in Hancock County in 2016. The Michigan felonies also involved Chears fleeing from law enforcement in a vehicle, sideswiping other drivers, and ramming a vehicle while officers tried to stop him. Chears acknowledged that he was sentenced to 10 months incarceration for those offenses, though he stated he was released after 8 months when he completed a cognitive behavior program.

**{¶8}** Based on the evidence presented at the hearing, the trial court found that Chears was in violation of his community control. The trial court then revoked his community control and imposed the reserved 18-month prison term. A judgment entry memorializing Chears's sentence was filed May 11, 2020. It is from this judgment that Chears appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Because of Appellant's limited criminal history, Appellant's history of adjustment to supervision, and Appellant's history of seeking counseling and maintaining gainful employment, the trial court's sentence of Appellant was not supported by the record.**

**Assignment of Error No. 2**
**Because the trial court did not credit Appellant with time served on his sentence, and Appellant was later charged with a community control violation based on his conviction in the same case, the trial court erred by not crediting Appellant with the time served in Michigan, as part of his sentence in Michigan Sixth Judicial Court case number 2019-271515-FH, pursuant to R.C. 2967.191.**

**Assignment of Error No. 3**
**Because the trial court did not properly notify Appellant of the terms and conditions of post-release control, either at Appellant's plea hearing or at his sentencing hearing, the trial court's sentence of Appellant with respect to Appellant's post-release control was contrary to law.**

*First Assignment of Error*

{¶9} In his first assignment of error, Chears argues that the trial court erred by imposing the reserved 18-month prison term when it revoked his community control. Chears contends that he had no criminal history prior to his 2016 felony conviction, that he expressed remorse in the matter, that he was employed, and that he was doing better since completing the cognitive behavior program in Michigan.

Standard of Review

{¶10} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that " 'which will produce in the mind of the

trier of facts a firm belief or conviction as to the facts sought to be established.' "

*Id*. at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Relevant Authority

**{¶11}** " 'The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than [a] minimum sentence[ ].' " *State v. Castle*, 2d Dist. Clark No. 2016-CA-16, 2016-Ohio-4974, ¶ 26, quoting *State v. King*, 2d Dist. Clark No. 2012-CA-25, 2013-Ohio-2021, ¶ 45; *State v. White*, 3d Dist. Marion No. 9-19-32, 2020-Ohio-717, ¶ 8. Nevertheless, when exercising its sentencing discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Kerns*, 3d Dist. Logan No. 8-18-05, 2018-Ohio-3838, ¶ 8, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38.

**{¶12}** Revised Code 2929.11 provides that sentences for a felony shall be guided by the overriding purposes of felony sentencing: "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). In order to comply with

those purposes and principles, R.C. 2929.12 instructs a trial court to consider various factors set forth in the statute relating to the seriousness of the offender's conduct and to the likelihood of the offender's recidivism. R.C. 2929.12(A)-(E).

Analysis

{¶13} In this case Chears was convicted of a third degree felony. Given that Chears elected to enter a guilty plea, and that the 2016 offense in Hancock County was his first felony offense, the trial court placed him on community control. The trial court indicated that it wanted to give Chears an opportunity, particularly to obtain his GED. Nevertheless, the trial court reserved an 18-month prison term if Chears was found in violation of his community control. Pursuant to R.C. 2929.14(A)(3)(b), a prison term for a third degree felony violation such as the one in this case "shall be a definite term of nine, twelve, eighteen, twenty-four, thirty, or thirty-six months." Thus the trial court's reserved prison term was within the appropriate statutory range.

{¶14} As Chears was a resident of Michigan, he was monitored in Michigan. Subsequently, in 2019, Chears committed two felonies in Michigan, and the State of Ohio sought to revoke his community control in Ohio. After a hearing on the matter, the trial court found that Chears was in violation of his community control. He was then sentenced to the reserved 18-month prison term.

{¶15} Chears now argues that the imposition of his reserved 18-month prison term was not supported by the record. He contends that the trial court could have elected to impose a lesser prison term or to use other community control sanctions in this matter.

{¶16} Contrary to Chears' argument, he was not even sentenced to a "maximum" prison term in this case. For his third degree felony he was ordered to serve an 18-month prison term, which is only half of the maximum possible, thirty-six months. Notwithstanding this point, Chears was initially not even sent to prison, he was given an opportunity on community control to abide by the conditions of his supervision, and he failed to do so when he committed two new felonies in Michigan. Those new felonies, as the trial court stated, were of a similar character to the felony he was already convicted of here in Ohio. Because of the new felonies in Michigan, and their similar nature to Chears's prior conviction here in Ohio, the trial court determined that Chears was no longer amenable to community control.

{¶17} Chears may argue that his mindset had changed since his conviction in Michigan, but for approximately eight months prior to the revocation of his community control in this case, he had been incarcerated in Michigan, and shortly before that term of incarceration he committed the offenses in Michigan. Based on those issues it is inaccurate to suggest he had been proceeding well on community control up until the point that his community control was revoked in 2020.

{¶18} Moreover, when Chears was initially sentenced to community control in this matter, and notified of the reserved 18-month prison term, the trial court indicated it had considered the principles and purposes of sentencing in fashioning its sentence. Although the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors listed in R.C. 2929.12, the sentencing court is not required to "state on the record that it considered the statutory criteria or discuss them." *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 32, quoting *State v. Polick*, 101 Ohio App.3d 428, 431 (4th Dist.1995). Rather, a trial court's statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes. *State v. Abrams*, 8th Dist. Cuyahoga No. 103786, 2016-Ohio-4570, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 18. Here, the trial court did explicitly state that it had considered the requisite statutes in its 2016 sentencing.

{¶19} Given that the trial court was in compliance with the sentencing statutes when Chears was originally sentenced, and that the trial court properly found that Chears was in violation of his community control based on his felony convictions in Michigan, we cannot find that the trial court erred by revoking his community control and imposing a prison term. The prison term was also within the appropriate statutory range, which means the sentence is presumptively valid.

*State v. Wrasman*, 3d Dist. Logan No. 8-19-36, 2019-Ohio-5299, ¶ 8; *State v. Sanders*, 3d Dist. Auglaize No. 2-19-13, 2020-Ohio-3506, ¶ 18, *appeal not allowed*, 160 Ohio St.3d 1440, 2020-Ohio-4983, ¶ 18.

**{¶20}** Chears has not met his burden on appeal to establish, by clear and convincing evidence, that the trial court erred by imposing the reserved prison term. His violations of community control by committing substantially similar felonies support the trial court's determination that he was no longer amenable to community control, particularly since he was making the same mistakes years after the original incident. For all of these reasons, Chears's first assignment of error is overruled.

*Second Assignment of Error*

**{¶21}** In Chears's second assignment of error, he argues that the trial court erred by not providing him with jail-time credit in *this* case for the time he spent incarcerated *on the convictions in Michigan*. He argues that since the community control violation in this case was predicated on the Michigan convictions, his incarceration in Michigan was not separate and apart from the case *sub judice*.

**{¶22}** Chears's argument facially misreads the requirements to receive jail time credit. Revised Code 2929.19(B)(2)(g)(i) requires that when a trial court determines at sentencing that a prison term is necessary or required, it must

> **Determine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is**

**being sentenced and by which the department of rehabilitation and correction must reduce the definite prison term imposed on the offender as the offender's stated prison term \* \* \* under section 2967.191 of the Revised Code.** *The court's calculation shall not include the number of days, if any, that the offender served in the custody of the department of rehabilitation and correction arising out of any prior offense for which the prisoner was convicted and sentenced.*

(Emphasis added.)

{¶23} Chears contends that his convictions and prison terms were interconnected since his community control was being revoked in this case for his felonies committed in Michigan. Chears ignores the fact that the reserved prison term in this case was for the crime he committed in Ohio by failing to stop for police for over 30 miles as he drove across spike strips and endangered motorists. Chears's incarceration in Michigan was for his specific crimes in Michigan. Based on those Michigan crimes, the trial court found that Chears had not demonstrated he was continuously amenable to community control, therefore the trial court imposed the reserved prison term. That reserved prison term was based on Chears's original crimes in this case in Ohio. Simply put, Chears is not entitled to jail-time credit in this case for days that he spent incarcerated on other charges, in another state altogether.[1] *See State v. Thomas*, 3d Dist. Marion No. 9-16-41, 2017-Ohio-607; *State v. Slappey*, 3d Dist. Marion No. 9-12-58, 2013-Ohio-1939, ¶ 37 ("a defendant

---

[1] Moreover, his original defense counsel may have recognized this as he did not claim that Chears was entitled to jail-time credit related to the Michigan convictions.

is not entitled to jail-time credit for any period of incarceration in another jurisdiction that arises from facts separate and apart from those on which the current sentence is based.").

{¶24} Based on the record before us we cannot find that the trial court erred by declining to credit Chears with any time he spent incarcerated in Michigan for the crimes he committed in Michigan. Therefore, Chears's second assignment of error is overruled.

*Third Assignment of Error*

{¶25} In his third assignment of error, Chears argues that the trial court did not properly notify him regarding post-release control at his plea hearing or at his sentencing hearing, so he contends that his sentence with respect to post-release control was contrary to law. More specifically, Chears argues that the trial court improperly informed him during his plea and at the sentencing hearing that if he was sent to prison, and if he was placed on post-release control, and if he violated his post-release control, he could be subject to up to three years of additional prison time. Chears argues that the trial court erred by informing him that he could face up to "three years" of additional prison time based on a post-release control violation, when the maximum amount would have been 18 months if he received a maximum sentence, or 9 months based on an 18-month sentence. Put another way, Chears contends that the trial court improperly told him at the plea hearing that he

was potentially facing more prison time if he violated post-release control than he actually would have been subject to if he violated post-release control in the future.

{¶26} In *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, ¶ 1, the Supreme Court of Ohio defined what is required to impose post-release control, holding,

> **that to validly impose postrelease control when the court orally provides all the required advisements at the sentencing hearing, the sentencing entry must contain the following information: (1) whether postrelease control is discretionary or mandatory, (2) the duration of the postrelease-control period, and (3) a statement to the effect that the Adult Parole Authority ("APA") will administer the postrelease control pursuant to R.C. 2967.28 and that any violation by the offender of the conditions of postrelease control will subject the offender to the consequences set forth in that statute.**

A review of the record shows that all of the requirements under *Grimes* were met in this case. In fact, the requirements were met multiple times.

{¶27} At the plea hearing in this matter, the trial court notified Chears of the maximum possible penalties of his crimes, including the fact that he could be placed on post-release control for three years. The trial court also stated at the plea hearing that the maximum possible prison sentence that Chears would face when he was sentenced was 36 months, and that half of that, 18 months, was his "maximum exposure for a series" of post-release control violations.[2] (Tr. at 26). Thus the trial

---

[2] Chears's primary argument in this matter seems to be that the trial court misinformed him prior to this point in the Crim.R. 11 dialogue. Even assuming the trial court misstated the amount of prison time Chears could face if he violated post-release control shortly before this point at the hearing, the trial court corrected itself

court properly informed Chears of his maximum potential post-release control prison exposure at the plea hearing. In fact, the trial court stated that since sentencing had not been held, and it had not seen a pre-sentence investigation yet, it wanted to cover the "worst case scenario" with Chears, thus covering the maximum possible terms. (*Id.*)

{¶28} Then, at the 2016 sentencing hearing, the trial court again referenced post-release control as a possibility, if Chears was ever sent to prison. The trial court's judgment entry of sentencing thoroughly and accurately stated all of the post-release control requirements, including that Chears's maximum possible prison term exposure for post-release control violations was one-half of his stated prison term.

{¶29} Finally, when Chears's community control was revoked in 2020, and he was actually sentenced to his reserved 18-month prison term, he was fully and accurately notified regarding post-release control.

> **THE COURT: * * * Further will find that at the conclusion of having to serve his 18-month prison sentence, that the Department of Corrections will have to make a decision about whether or not to place the Defendant upon post-release control supervision. In the event the Department of Corrections determines that the Defendant should be placed on post-release control, they can place him on post-release control for up to three years. However, as Judge Niemeyer advised you, Post-release control is not mandatory. They are not required to put you on**

---

with the appropriate information. Nevertheless, we fail to see how there can be anything prejudicial about informing a defendant at a plea hearing that he was subject to more potential post-release control consequences than he actually would be.

**supervision. If they choose to place you on supervision at the conclusion of your sentence, there will be rules that you will have to follow. And if you were to violate any of your rules of post-release control supervision, you could, as a sanction, be ordered back to prison, for up to nine months for any single violation, but you can never be ordered back for more than one half of your total stated prison term for any combination of violations.**

[The trial court then continues to inform Chears regarding post-release control supervision.]

(May 11, 2020, Tr. at 55-56).

{¶30} After reviewing the record, we find that Chears has clearly and convincingly demonstrated any error here related to his post-release control. The trial court appropriately informed him that he *may* be subject to up to *three years* of post-release control, and that there could be certain consequences for violating that post-release control *if* he was even placed on it. This places the trial court in compliance with appropriate notifications under *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, ¶ 1. Therefore, Chears's third assignment of error is overruled.

*Conclusion*

{¶31} For the foregoing reasons, Chears's assignments of error are overruled and the judgment of the Hancock County Common Pleas Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**