[Cite as *State ex rel. Randlett v. Lynch*, 2021-Ohio-221.]

IN THE COURT OF APPEALS OF OHIO

TENNTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Larry A. Randlett, | : | |
| Relator, | : | |
| v. | : | No. 20AP-489 |
| Judge Julie M. Lynch, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

D E C I S I O N

Rendered on January 28, 2021

**On brief:** *The Tyack Law Firm Co., L.P.A.,* and *Jonathan T. Tyack,* for relator. **Argued:** *Jonathan T. Tyack.*

**On brief:** [*G. Gary Tyack*]*,* Prosecuting Attorney, and *Seth L. Gilbert,* for respondent. **Argued:** *Seth L. Gilbert.*

IN MANDAMUS

NELSON, J.

{¶ 1} Larry Randlett seeks a writ of mandamus that would order a common pleas court judge to withdraw her nunc pro tunc orders specifying that the duration of the period of postrelease control previously ordered for and that attaches to 41 of the 67 felony sex crimes of which he was convicted in 2003 is the five years mandated by law. Because we conclude that he does not in the circumstances of this case have a clear legal right to such a writ, we will deny his petition.

{¶ 2} We need not belabor the nature of Mr. Randlett's crimes. Suffice it to note that at the March 31, 2003 sentencing, Judge McGrath neatly summarized the offenses as involving "five separate and distinct victims, multiple counts, multiple offenses against each, young teenage boys. Predatory scheme over seven years, only stopped when caught. Abused trust, creating great psychological harm, and it's been a life-altering experience in

a negative way for each of the victims." Tr. at 244. The unpleasant facts are further laid out in *State v. Randlett*, 10th Dist. No. 03AP-385, 2003-Ohio-6934 ("*Randlett I*").

{¶ 3} On February 10, 2003, Mr. Randlett entered pleas of guilty in four cases, three of which are at issue here. In Franklin C.P. No. 01CR-705, he pled guilty to two third-degree felonies of sexual battery and six fourth-degree felonies of gross sexual imposition. In Franklin C.P. No. 01CR-4353, he pled guilty to seven third-degree felonies of gross sexual imposition, nine fourth-degree felonies of gross sexual imposition, six fourth-degree felony counts of corruption of a minor, and one fourth-degree and one fifth-degree felony of disseminating matter harmful to juveniles. In Franklin C.P. No. 02CR-1721, he pled guilty to nine fourth-degree felonies of corruption of a minor and (under "old law") to eight third-degree felonies of corruption of a minor and three fourth-degree felony counts of gross sexual imposition. In Franklin C.P. No. 02CR-1738, he pled guilty (under "old law") to six third-degree and eight fourth-degree felony counts of gross sexual imposition and to one third-degree count of corruption of a minor.

{¶ 4} Mr. Randlett signed a total of three plea forms relating to the "new law" counts as to which postrelease control would attach. Those forms specified that as to the felony sex offenses (and this box was checked on each of the three forms), Mr. Randlett certified that: "If the Court imposes a prison term, I understand that the following period(s) of post-release control is/are applicable: * * * Felony Sex Offense * * * Five Years-Mandatory [box checked]." Mr. Randlett further attested on the plea form that "I understand that a violation of post-release control" could result in certain sanctions. February 10, 2003 plea forms in 01CR-705, 01CR-4353, and 02CR-1721 (plea form regarding "new law" counts).

{¶ 5} During the plea colloquy, and consistent with the various plea forms, the trial judge distinguished between "the new law and the old law." February 10, 2003 Tr. at 28. After discussing theoretical possibilities for community control (new law) and probation (old law), the Judge said:

> in the new law sections of the case, if you go to prison on these
> cases for any, for felony sex offense, once released from prison,
> you will be subject to five years mandatory supervision by the
> Adult Parole Authority of Ohio, and if you violated the law
> while under their five-year supervision, they could send you
> back to prison on the new law cases, new law counts of these

> cases for additional time in addition to what the Court had given you, but in any event they can't add any more time than one-half of whatever the total of the Court's sentence was. Do you understand that?

*Id.* at 30. Mr. Randlett responded: "Yes, I do, Your Honor." *Id.*

{¶ 6} The Judge and the parties returned to the matter of postconviction release at the sentencing hearing, after the court had imposed prison sentences that, as later modified by this court to be consistent with trial court pronouncements at the hearing, amounted to what we somehow later calculated as 18 years. *Compare* April 3, 2003 Judgment Entries *with Randlett I* at ¶ 43-45, 55; *State v. Randlett*, 10th Dist. No. 06AP-1073, 2007-Ohio-3546, ¶ 3 (*Randlett I* "determined that the trial court erred in imposing a greater sentence than that pronounced at the sentencing hearing and, accordingly, modified defendant's sentence to a prison term of 18 years").

> THE [SENTENCING] COURT: Let's see. All right. With respect to the new law F-3s and F-4s, the F-3 GSIs, the Court believes -- is it five-year mandatory? You can correct me if I'm wrong.
>
> [DEFENSE COUNSEL]: Five-year mandatory supervised release, Your Honor.
>
> THE COURT: Right. Once released from prison after twenty years, you would be supervised, Mr. Randlett, for a five-year period, mandatory, by the Adult Parole Authority of Ohio. If you violated the law, you can be sent back to prison for more time on these cases, on these F-3 new law cases, counts, than the Court has given you, but in any event, no greater amount of extra time than one-half of the Court's sentence.
>
> And as to the F-4s and F-5s under the new law, I believe there is an optional supervision by the Adult Parole Authority. If you violated the law, they can send you back to prison for more time than the Court had given you on those counts, but in any event, no greater amount of extra time than one-half of the Court's sentence.

March 31, 2003 Tr. at 247-48.

{¶ 7} This erroneous mandatory/optional spoken distinction between third-degree felony sex offenses and lesser degree felony sex offenses for purposes of postrelease control (which under the law is a mandatory five years for all felony sex offenses, R.C.

2967.28(B)(1)) was not reflected in the judgment entries filed after sentencing. The judgment entries for "new law" cases 01CR-705 and 01CR-4353 each recited simply: **"After the imposition of sentence, the Court notified the Defendant, orally and in writing, of the applicable periods of post-release control pursuant to R.C. 2929.19(B)(3)(c), (d) and (e)."** April 3, 2003 Judgment Entries (emphasis added); *see also* Mandamus Petition at ¶ 8, 10. That same language also appeared in the judgment entry for 02CR-1721, which further divided the sentences there between new law and old law counts, noting with regard to the latter that for offenses that "occurred prior to Am. Sub. S. B. 2," Mr. Randlett "is not subject to post release control." April 2, 2003 Judgment Entry; *see also* Mandamus Petition at ¶ 9. Properly, and of note, no language regarding postrelease control appeared in the judgment entry for 02CR-1738, which related entirely to "old law" offenses. April 3, 2003 Judgment Entry; *see also* Mandamus Petition at ¶ 11.

{¶ 8} Consistent with the judgment entries, the trial court also signed "disposition sheets," filed on the same April 3, 2003 date, that for the three relevant cases confirmed that the "Defendant [had been] notified of * * * Post Release Control in writing and orally"; Judge McGrath took care to strike inappropriate reference to "Bad Time" notification on each of those forms. The record further reflects a "NOTICE (Prison Imposed)" form signed by Mr. Randlett and his lawyer on the day of the sentencing hearing and filed April 7, 2003 in which the trial court notified the defendant that "felony sex offenders" are subject to a "mandatory 5 years" of postrelease control: that additional advisement, while not reflected in the body of that one-page form (where the mandatory and durational aspects of the term were left blank) was provided in the one-page document's only (and slightly more than one-line-long) footnote.

{¶ 9} The reference in each of the three relevant sentencing entries to "the applicable periods of post-release control" was not appealed in 2003 or thereafter. Mr. Randlett did appeal from the consecutive nature and length of the sentences, from the trial court's determination that he was a sexual predator, and from the trial court's reliance on undisclosed victim impact statements. *See* Mandamus Petition at ¶ 12; *Randlett I* at ¶ 20. This court did modify two judgments of the trial court to reflect the precise sentence lengths imposed at the sentencing hearing: "With those modifications, the judgments of the trial court [were] affirmed as modified." *Randlett I* at ¶ 55.

{¶ 10} Nor were the judgments disturbed by Mr. Randlett's February 10, 2006 application to reopen his appeal, *see State v. Randlett*, 110 Ohio St.3d 1443, 2006-Ohio-3862 (declining review of this court's denial), or by his August 25, 2006 motion for relief from judgment under Civ.R. 60(B), *see State v. Randlett*, 10th Dist. No. 06AP-1073, 2007-Ohio-3546 (affirming trial court denials of relief from judgment).

{¶ 11} Roughly some 17 years after he was sentenced and after this court resolved his direct appeal, Mr. Randlett neared his release from prison. *See* Mandamus Petition at ¶ 22 (citing stated release date of November 30, 2020). Matters took a turn. In a form letter dated August 6, 2020 and addressed to the Franklin County Prosecutor, Ohio Parole Board Chief Hearing Officer Brigid Slaton referenced the three relevant case numbers and opined that the trial court's "entry * * * does not include sufficient notification regarding post-release control. In order for the [Adult Parole Authority] to assess this individual for post-release control, post-release control must be properly included in the sentencing entry. * * * * A corrected entry that imposes post-release control, and includes the prescribed duration in R.C. 2967.28, will enable the Parole Board to place this individual on post-release control." Ms. Slaton checked two boxes on the form: "1) As the sentencing entry for this case omits post-release control, corrective action must be taken to ensure that the individual can be placed under post-release control supervision," and "2) As the sentencing entry for this case omits the duration of the post-release control period, corrective action must be taken to ensure that the individual can be placed under post-release control supervision."

{¶ 12} The prosecuting attorney disagreed with the parole authority's understanding of the state of the law, and advised the trial court that "the * * * notice requiring [sic] corrective action is in error." August 21, 2020 Motion for Nunc Pro Tunc Entry at 2. Nonetheless, in what he called "an abundance of caution – and to ensure that Randlett is subject to the mandatory supervision upon his release," the prosecutor requested that the trial court "file nunc pro tunc entries in these cases stating that Randlett is subject to a mandatory five-year term of PRC." *Id.* at 3. Mr. Randlett opposed the motion, and, "so that there [would be] no misunderstanding on the part of the Ohio Department of Rehabilitation and Corrections, * * * request[ed] a ruling by the Court declaring that Postrelease Control is not a part of Defendant's sentence in these cases."

September 17, 2020 Memorandum Contra and Cross-Motion at 1 (in trial court docket of which this court takes judicial notice); *see id.* at 3-4 ("The language in the Sentencing Entries does not impose postrelease control, and as such, postrelease control is not a part of Defendant's sentence. * * * * Because the State did not appeal these 'voidable' Sentencing Entries, the Court's judgment in these cases is final.").

{¶ 13} The trial court found "good cause" for the state's motion and in each of the three cases issued a nunc pro tunc order "to reflect that the Defendant is subject to a mandatory five-year term of Post Release Control." October 6, 2020 Nunc Pro Tunc Order. For each case, that alteration took the form of adding the phrase "**is Five (5) years mandatory**" at the end of the April 3, 2003 sentencing entry's statement that "[a]fter the imposition of sentence, the Court notified the Defendant, orally and in writing, of the applicable periods of post-release control pursuant to R.C. 2929.19(B)(3)(c), (d), and (e)." (We see no dispute that as to cases 01CR-705 and 01CR-4353, the nunc pro tunc change accurately described what actually was said at the sentencing hearing; further, the state acknowledges that the trial court at the sentencing hearing never correctly advised Mr. Randlett of the mandatory applicable five-year period of postrelease control in 02CR-1721, in that the trial court mistakenly thought that such period did not apply to fourth- or fifth-degree felony sex offenses. And because they purport to reach back to the March 31, 2003 sentencing hearing, the nunc pro tunc orders naturally do not purport to incorporate this court's *Randlett I* sentence modifications: neither those clarifications nor Mr. Randlett's prison release date is at issue here.)

{¶ 14} Mr. Randlett did not appeal the nunc pro tunc orders, but responded with his petition seeking mandamus. The gist of his argument is that the "original [three] April 3, 2003 sentencing entries * * * failed to properly impose[] PRC because they did not provide the statutorily compliant notification regarding postrelease control," Mandamus Petition at ¶ 42; that "[i]f the entries contain a legal error favoring a defendant, then the **State** should have appealed the error * * * * and is therefore barred by res judicata from now claiming, more than seventeen (17) years later, that the trial court failed to properly impose PRC in the sentencing entries," *id.* at ¶ 32, 31 (emphasis in original); and that the trial court in any event lacked subject matter jurisdiction over the three cases in which it issued nunc pro tunc entries because Mr. Randlett already had served his sentence in those three cases

and was imprisoned only on 02CR-1738, for which postrelease control does not obtain, *id.* at ¶ 33-38, 46-48.

{¶ 15} The state moved to dismiss Mr. Randlett's petition, and after review we consolidated those arguments with further filing and argument on the merits, which we considered at an oral hearing conducted on January 6, 2021. Both parties have made good presentations, but we do not accept Mr. Randlett's predicate that postrelease control would be unenforceable under the 2003 sentencing entries as originally issued. Our reading of the law is that the nunc pro tunc orders altered neither the fact nor the duration of the postrelease control imposed by the original entries. Mr. Randlett is correct that those original entries are res judicata, but that means not that by law he is out from under postrelease control obligations, but rather that he was to be subject to a mandatory five-year period of postrelease control upon his release from prison. Because the nunc pro tunc additions have no legal effect on the fact and duration of the postrelease control ordered, we do not find that Mr. Randlett has established a clear legal right to the writ he seeks. Therefore, we do not reach a conclusion as to the state's further argument that a writ would be improper because Mr. Randlett had an adequate remedy at law, through appeal, for any claims.

{¶ 16} "To be entitled to a writ of mandamus, a relator must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Olmstead v. Forsthoefel*, __Ohio St.3d __, 2020-Ohio-4951, ¶ 7, citing *State ex rel. Love v. O'Donnell*, 150 Ohio St.3d 378, 2017-Ohio-5659, ¶ 3.

{¶ 17} The premise of Mr. Randlett's writ request is that "**To 'Adequately Impose' PRC, Corrective Action Was Necessary,**" November 18, 2020 Memorandum Contra Respondent's Motion to Dismiss, [Etc.] at 17 (emphasis in original), and that because of res judicata and also what he argues was the expiration of his relevant sentences, the trial court lacked authority to order such corrective action, *see, e.g., id.* at 22 ("**Res Judicata Applies**") (emphasis in original), 34 ("A trial court lacks jurisdiction to impose PRC upon an offender when the sentence for the entire case has been already served").

{¶ 18} To bear out the first part of his argument, Mr. Randlett leans on *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, and argues that it has retroactive effect to mean that because the April 3, 2003 sentencing entries omitted reference to the consequences of violating postrelease control and because the entries "do not indicate the length of Relator's term of post-release control and whether said term is mandatory or not," postrelease control could not be effectuated absent corrective action by the court. November 18, 2020 Memorandum at 17-20, 21 (also arguing at 21-22 that "the 2003 Sentencing Entries * * * were clearly not sufficient to comply with pre-*Grimes* post-release control notification requirements").

{¶ 19} But *Grimes* and its progeny, as Mr. Randlett recognizes, have in some significant part been overtaken by even more recent Supreme Court rulings. Here, we paint with a bit of a broad brush simply to sketch the background landscape.

{¶ 20} In the years immediately following Mr. Randlett's sentence, the Supreme Court made clear that " 'unless a trial court includes postrelease control in its sentence, the Adult Parole Authority is without authority to impose it.' " *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, ¶ 20, quoting *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 19 (overruled in part by *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913). But that postrelease control sentencing language did not need to be perfect, or even entirely correct, in order to withstand collateral attack. *See, e.g., Watkins v. Collins*, 111 Ohio St.3d 425, 2006-Ohio-5082, ¶ 53 (the "sentencing entries, although they mistakenly included wording that suggested that imposition of postrelease control was discretionary, contained sufficient language to authorize the Adult Parole Authority to exercise postrelease control over the petitioners. Consequently, * * * habeas corpus is not available to contest any error in the sentencing entries, and petitioners have or had an adequate remedy by way of appeal to challenge the imposition of postrelease control").

{¶ 21} Consistent with that guidance, this court regularly upheld against collateral attack the effectiveness of sentencing entry language advising prison and parole authorities that the court had imposed postrelease control requirements for the "applicable periods." For example, in *State v. Holloman*, 10th Dist. No. 11AP-454, 2011-Ohio-6138, ¶ 10, we addressed a formulation identical to the 2003 sentencing entries relevant here: "the trial court's judgment entry imposing appellant's sentence stated that 'the Court notified the

Defendant, orally and in writing, of the applicable periods of post-release control pursuant to R.C. 2929.19(B)(3)(c), (d) and (e).' " We said: "In similar post-release control notification cases, this court has concluded that post-release control may be properly imposed when the 'applicable periods' language in the trial court's sentencing entry, such as in the present case, is combined with other written or oral notification of the imposition of post-release control." *Id.* at ¶ 11 (citations omitted). The entry notification was proper and effective. *Id.* at ¶ 13. *See also, e.g., State v. King*, 10th Dist. No. 15AP-930, 2016-Ohio-1247, ¶ 16 ("applicable periods" entry language upheld against collateral attack: "This court has previously held that 'post-release control may be properly imposed when the "applicable periods" language in a trial court's sentencing entry "is combined with other written or oral notification of the imposition of post-release control" ' ") (citations omitted).

{¶ 22} It is fair to say that the landscape changed with *Grimes*. That 2017 decision involved a challenge to sanctions for violation of postrelease control terms that the offender argued had not been validly imposed in the first instance. In the process of upholding the sanctions, the Supreme Court majority held that "to validly impose postrelease control when the court orally provides all the required advisements * * *, the sentencing entry must contain the following information: (1) whether postrelease control is discretionary or mandatory, (2) the duration of the postrelease-control period, and (3) a statement to the effect that the Adult Parole Authority will administer the postrelease control pursuant to R.C. 2967.28 and that any violation by the offender of the conditions of postrelease control will subject the offender to the consequences set forth in that statute." 2017-Ohio-2927, at ¶ 1. *Grimes* further said that it is "the trial judge's responsibility to impose postrelease control, including the responsibility to interpret the law to determine in each case whether postrelease control is mandatory or discretionary and to determine the term of supervision as well as to advise the offender of those determinations * * *. It is the responsibility of the APA to carry out the sentence after the court imposes it, not to interpret the law and facts and impose its own sentence based on information in the sentencing entry." *Id.* at ¶ 21.

{¶ 23} But *Grimes* was not the end of the saga, as the parties here recognize. *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, "realign[ed]" Ohio precedent and established that "[w]hen a case is within a court's subject-matter jurisdiction and the accused is properly before the court [as Mr. Randlett unquestionably was in 2003], *any*

error in the exercise of that jurisdiction in imposing postrelease control renders the court's judgment voidable, permitting the sentence to be set aside if the error has been successfully challenged on direct appeal." *Id.* at ¶ 4 (emphasis added). In such circumstances, that is, "*any* error * * * in failing to properly impose postrelease control rendered the judgment of conviction voidable, not void, and it is not subject to collateral attack." *Id.* at ¶ 5 (adding: "Therefore, to the extent any prior case conflicts with our holding today, it is overruled").

{¶ 24} Although the sentencing court in *Harper* had failed to "include the consequences of a violation of postrelease control in the sentencing entry itself"—thus violating one of the three *Grimes* requirements for the "valid[]" imposition of postrelease control, 2017-Ohio-2927, at ¶ 1—defendant Harper had not appealed that error. 2020-Ohio-2913, at ¶ 8. The Supreme Court found it "time * * * to reevaluate the basic premise of our void-sentence jurisprudence and the remedy for the failure to properly impose postrelease control." *Id.* at ¶ 34. The court observed that "[i]f the entry were merely voidable, res judicata would apply," *id.* at ¶ 18, and it noted the virtues of finality and judicial economy that come with a definitive end to litigation, *id.* at ¶ 37. Then the court held: "we overrule our precedent to the extent that it holds that the failure to properly imp0ose postrelease control in the sentence renders that portion of a defendant's sentence void." *Id.* at ¶ 40. Significantly for the purposes of the matter before us, we note that the Supreme Court continued: "*Any* error in imposing the postrelease-control sanction in [Harper's] sentence * * * could have been objected to at trial and that may have been reversible error on direct appeal. However, such an error [that is, 'any' error in imposing postrelease control] did not render any part of Harper's sentence void." *Id.* at ¶ 41 (emphasis added); *see also id.* at ¶ 43 (Court cautions "prosecuting attorneys, defense counsel, and pro se defendants throughout this state that they are now on notice that any claim that the trial court has failed to properly impose postrelease control in the sentence must be brought on appeal from the judgment of conviction or the sentence will be subject to res judicata").

{¶ 25} We understand *Harper* to mean that the three entries in Mr. Randlett's cases signaling the imposition of postrelease control are controlled by res judicata regardless of any *Grimes*-type error that might have been but that was not raised on direct appeal. That teaching has the effect of revalidating, where the issue was not taken up on direct appeal, the result of this district's substantial jurisprudence giving effect against collateral attacks

to the "appropriate periods" sentencing entry language that the Randlett sentencing entries contained.

{¶ 26} *State v. Hudson*, __ Ohio St.3d __, 2020-Ohio-3849, buttresses our reading of *Harper*. "Relying on *Grimes*," the offender there argued that he could not be subject to postrelease control because the sentencing entry did not include notice of the consequences of postrelease control violation; it was too late to correct the entry, he urged, because he had served the prison term to which postrelease control attached. *Id.* at ¶ 1. The Supreme Court said again that the sentencing entry's "failure [to include consequence language] does not render *any* part of the sentence void." *Id.* at ¶ 3 (emphasis added). We take that to mean that the failure did not invalidate the entry's imposition of postrelease control, which was res judicata. *See also id.* at ¶ 16 (any error in properly imposing postrelease control "did not render *any* part of [the] sentence void") (emphasis added); ¶ 17 (when sentencing court has jurisdiction, "sentencing errors in imposing postrelease control render the sentence voidable, not void, and the doctrine of res judicata will apply to collateral attacks on it"). Thus, the Supreme Court said that it did not need to decide whether Hudson had fully served the sentence to which postrelease control attached, "because * * * this collateral attack on his sentence is barred by res judicata." *Id.* at ¶ 10.

{¶ 27} The Supreme Court "therefore" reversed a remand that this court had ordered requiring the trial court to correct its postrelease control entry. *Id.* at ¶ 19. *Harper* had done the same thing. 2020-Ohio-2913, at ¶ 44. Informed by *Harper* and *Hudson*, we agree with what we take to be Mr. Randlett's assumption that "absent a timely appeal, res judicata generally allows only the correction of a void sanction." *State v. Holdcraft*, 137 Ohio St.3d 526, 2013-Ohio-5014, ¶ 9, citing *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 40. Postconviction release sentences that at one point may have been voidable, but that were not voided and are not void, cannot appropriately be revised, nor can postrelease control be added to res judicata sentences that did not mention postrelease control in the first place. But here, the more salient point—and the place where we part company with Mr. Randlett's analysis—is that because the imperfect imposition of postrelease control in his cases was never voided, that part of his sentences remained in full force.

{¶ 28} The legal effect of the challenged nunc pro tunc entries was redundant: the imposition of postrelease control for "appropriate periods" in this case already had the

effect of imposing a five-year mandatory period of PRC in each of the three cases. (That is true, we conclude, even with regard to case number 02CR-1721, where the entry—n0w res judicata—contained the "appropriate periods" language despite seeming incongruity with certain remarks at the sentencing hearing.)

{¶ 29} *State v. Bell*, 160 Ohio St.3d 216, 2020-Ohio-3104, puts an even finer point on the analysis. This court had *affirmed* a trial court judgment denying a motion to vacate postrelease control as not in compliance with *Grimes*, but remanded the matter for the trial court to issue a nunc pro tunc entry correcting the sentencing entry. *See State v. Bell*, 10th Dist. No. 17AP-645, 2018-Ohio-3576, ¶ 13. The Supreme Court reversed the remand, while leaving the affirmance in place. 2020-Ohio-3104, at ¶ 1. *Bell* again confirms that res judicata entries that imposed postrelease control in a way violative of *Grimes* stand, unaltered (and unchangeable).

{¶ 30} Mr. Randlett cites to *State v. Payne*, 10th Dist. No. 19AP-248, 2020-Ohio-1009, for the proposition that "the trial court's judgment entries [there, and by extension here] were contrary to law because, under *Grimes*, they did not properly impose post-release control"; therefore, he urges, the " 'applicable periods' language [employed only for the 'possibility' of use in the original entries in *Payne, id.* at ¶ 35]" does not "mean ' " 'the statute controls.' " ' " December 30, 2020 Relator's Reply at 4, citing *Payne* at ¶ 33-39 as in contrast with the state's briefing. But the single-judge lead opinion in *Payne* issued *before Harper* and *Hunter* realigned Ohio precedent and made clear that *Grimes*-type errors in imposing postrelease control do not make the postrelease control part of a sentence void. *See, e.g., Harper* at ¶ 5 ("any error * * * in failing to properly impose postrelease control rendered the judgment of conviction voidable, not void, and it is not subject to collateral attack"; previous decisions in conflict with that holding are "overruled"). The view of the lead opinion in *Payne* that "[w]hen post-release control is not appropriately imposed [under *Grimes* analysis] in a trial court's judgment entry, the sentence is partially void and never becomes final in that limited respect," 2020-Ohio-1009, at ¶ 37, has been overtaken by subsequent Supreme Court authority (here with regard to sentencing entries that did impose postrelease control, *see* 2003 sentencing entries; *see also* Mandamus Petition at ¶ 39 ("[t]hese three cases were the only cases for which postrelease could be, and was, in fact, imposed by the trial court at sentencing").

{¶ 31} Understood in light of *Harper* and *Hudson* and *Bell* and for the reasons discussed above, the legal effect of the nunc pro tunc entries here was to add a coda signifying little more than, 'and the court means it.' The imposition of postrelease control had not been appealed, and was res judicata. The law requires a five-year period of postrelease control for Mr. Randlett. R.C. 2967.28(B)(1); *see also* R.C. 2967.28(F)(4)(c) ("period of post-release control for all of the sentences should be the period of post-release control that expires last"). Here, moreover, and even beyond the "appropriate periods" sentencing entry language that had effectuated postrelease control in many cases under reasonably longstanding authority of this court, the record contains a clear "Notice (Prison Imposed)," signed by the defendant and his lawyer and filed in the trial court on April 7, 2003 reciting that the relevant "Post-Release Control" period is, for "felony sex offenders – mandatory 5 years."

{¶ 32} Thus, in appraising whether the res judicata entries' imposition of postrelease control without specification of the mandatory five-year nature of that term adequately directs that postrelease control be for the "appropriate periods," we need not even turn to the direction provided by *Fraley v. Ohio Dept. of Rehab & Corr.*, ___ Ohio St.3d ___, 2020-Ohio-4410. That decision states: "When a statute requires sentences to be served consecutively and the sentencing entry is silent as to how the sentences are to run, the statute controls." *Id.* at ¶ 13 (citation omitted). Analogy from that principle of *Fraley* to this current matter, with the trial court having adverted to postrelease control for the "appropriate periods," would not be much of a stretch in concluding that the Department of Corrections must observe statutory law in the face of silence as to the mandatory five-year nature of the period. *See also id.* at ¶ 17-18 ("DRC's role is not to correct a sentencing court's errors and impose the sentence it believes the court should have imposed. * * * * DRC has a clear legal duty to carry out the sentence that the trial court imposed * * *."). As we have observed, however, the written court record, including the "Notice (Prison Imposed)" document, is not silent (and is consistent with statute). The *Fraley* reminder thus supports, but is not necessary to, the conclusion that the sentencing entries as they issued in 2003 required a five-year mandatory period for the postrelease control to which they adverted.

**{¶ 33}** Because Mr. Randlett had been sentenced in the original 2003 entries to what was to amount to a five-year mandatory period of postrelease control, we do not accept his predicate that the nunc pro tunc entries imposed that component of his sentence for the first time. *See supra* at ¶ 17. We conclude, therefore, that Mr. Randlett does not have a clear legal right to the "extraordinary remedy" he seeks. *Compare, e.g., State ex rel. Evans v. Chambers-Smith*, 156 Ohio St.3d 430, 2019-Ohio-1335, ¶ 13 (prison record case: "Mandamus, as an extraordinary remedy, is available to inmates to correct prison records only upon an allegation of present harm"); *State v. White*, 10th Dist. No. 19AP-153, 2020-Ohio-4313, ¶ 3 (offender "cannot be heard now to complain that the trial court improperly used the nunc pro tunc mechanism to reduce the postrelease control term to its statutorily specified three-year period: as the state submits, that alteration in no way harms" him; also citing *Hudson* and *Harper* in noting at ¶ 2 that "[b]ecause a claimed mistake in postrelease control does not make even that portion of [a years' old] sentence void, any such asserted error that was not challenged on direct appeal from the sentence 'is now barred by the doctrine of res judicata' ").

**{¶ 34}** Lacking a clear legal right to the extraordinary remedy he seeks, Mr. Randlett is not entitled to the writ. Therefore we need not explore whether any adequate remedy at law also would operate to bar his mandamus pursuit. We deny Mr. Randlett's petition for a writ of mandamus, and the state's motion to dismiss the petition is rendered moot.

*Petition for writ of mandamus denied;*
*motion to dismiss petition rendered moot.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____